**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re REFCO, INC. SECURITIES LITIGATION | 07 MDL 1902 (JSR) |
| GEORGE L. MILLER, Chapter 7 Trustee for the Estate of Suffolk LLC, <br><br> Plaintiff, <br><br> -against- <br><br> PF SALECO, LLC, et al., <br><br> Defendants. | 09 Civ. 2866 (JSR) (Consolidated) |

**PLAINTIFF'S RESPONSE TO THE BANK DEFENDANTS' LIMITED OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON THE BANK DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**<u>Table of Contents</u>**

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...................................................................................................................2

The Special Master Correctly Concluded that Suffolk Was Not a Mere Conduit..............2

The Special Master Appropriately Declined to Apply the Earmarking Doctrine................4

CONCLUSION................................................................................................................6

# Table of Authorities

**Cases**

*Branch v. Hill, Holliday, Connors, Cosmopoulos, Inc. Adver. (In re Bank of New England Corp.),* 165 B.R. 972 (Bankr. D. Mass. 1994) .......................................................................... 5

*Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007) ........................................ 5

*Glinka v. Bank of Vermont (In re Kelton Motors, Inc.)*, 97 F.3d 22 (2d Cir. 1996) ..................... 5

*In re Bohlen Enterprises, Ltd.*, 859 F.2d 561 (8th Cir. 1988) ........................................................ 5

*In re Gutpelet*, 137 F.3d 748 (3d Cir. 1998) ................................................................................ 4

*Kapila v. Espirito Santo Bank (In re Bankest Capital Corp.),* 374 B.R. 333 (Bankr. S.D.Fla. 2007) .............................................................................................................................................. 4

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.*, 813 F.2d 1177 (11th Cir. 1987) ................ 3

**Rules**

Fed. R. Civ. P. 53 ........................................................................................................................... 1

**PLAINTIFF'S RESPONSE TO THE BANK DEFENDANTS' LIMITED OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON THE BANK DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 53, plaintiff, George Miller, chapter 7 trustee for the estate of Suffolk LLC (the "Suffolk Trustee"), hereby submits his response to the limited objection (the "Limited Objection") of the bank defendants, Credit Suisse First Boston Next Fund, Inc., Lab Morgan Corporation and ML IBK Positions, Inc. (the "Bank Defendants"), to the report and recommendation (the "R&R") of the Special Master, Daniel J. Capra (the "Special Master"), on the Bank Defendants' motion to dismiss the Suffolk Trustee's amended complaint (the "Amended Complaint").

## PRELIMINARY STATEMENT

In the Limited Objection, the Bank Defendants assert that the Special Master erred in holding that (i) Suffolk was not a mere conduit and (ii) the earmarking doctrine does not bar avoidance of the fraudulent transfers from Suffolk to the Bank Defendants.  (Ltd. Obj. at 1 ("Suffolk was a mere conduit for the transfer of Refco funds to the Bank Defendants, and thus Plaintiff may not recover those funds for Suffolk's bankruptcy estate because they were never Suffolk's property in the first place.")).

Contrary to the Bank Defendants' assertions in the Limited Objection, the Special Master correctly found that Suffolk was not a mere conduit and appropriately declined to apply the earmarking doctrine.

## ARGUMENT

### The Special Master Correctly Concluded that Suffolk Was Not a Mere Conduit

In the R&R, the Special Master correctly concluded that Suffolk was <u>not</u> a mere conduit. (R&R at 16).  This Court should affirm the Special Master's finding that Suffolk was <u>not</u> a conduit.

In the Limited Objection, the Bank Defendants argue once again that Suffolk was a mere conduit.  The Bank Defendants base this argument upon two assertions of their own making: per the Bank Defendants, Suffolk did not control the funds at issue, and the funds were never property of Suffolk's bankruptcy estate.  (Ltd. Obj. at 7, 8).  Neither the facts alleged in the Amended Complaint nor the cases cited by the Bank Defendants support this assertion.

Suffolk was a limited liability company that received a secured loan from Refco Capital LLC ("Refco Capital") with which to undertake the PlusFunds tender offer.  (Am. Compl. at ¶¶ 36, 53-56; Ex. C (Phase 1 Credit Agreement) to Firsenbaum Decl. in Support of Ltd. Obj.).  The loan was secured by the tendered PlusFunds shares.  Suffolk was the owner of the loaned funds and owned the shares once they were purchased with those funds.  (Am. Compl. at ¶¶ 146, 148-149).  Although Refco Capital had a call option on the PlusFunds shares once Suffolk took title to them, it never exercised its call right or acquired the shares from Suffolk.  (Am. Compl. at ¶ 139).  Today, the shares remain under the ownership of, and in the possession of, the Suffolk bankruptcy estate.  Thus, the money used to fund the PlusFunds tender offer was and is property of Suffolk's bankruptcy estate.

None of the cases cited by the Bank Defendants in the Limited Objection support their assertion that the money loaned to Suffolk by Refco Capital was not property of Suffolk's estate and, by extension, not subject to the Suffolk Trustee's avoidance powers.  The cases cited by the

2

Bank Defendants instead involve three inapposite circumstances where courts have held that a payment made to a debtor is not property of the debtor's estate:  (1) where money is transferred to the debtor to repay a pre-existing debt of the lender that was entirely "tangential" to the debtor; (2) where a new creditor lends money to the debtor for the purpose of paying off a specific pre-existing creditor, simply substituting a new creditor for an old creditor; and (3) where the debtor holds an asset in trust.  Refco Capital's loan to Suffolk and Suffolk's use of the money to fund the PlusFunds tender offer does not resemble any of those situations.

The Bank Defendants cite cases where a third party pays off its own pre-existing debt by funneling a payment through the debtor.  These cases are inapplicable to the case *sub judice*. The loan by Refco Capital to Suffolk did not pay off any pre-existing debt owed by Refco Capital or any other entity to the Bank Defendants or to any other PlusFunds shareholders.

*Nordberg v. Sanchez (In re Chase & Sanborn Corp.*, 813 F.2d 1177 (11th Cir. 1987) is illustrative of the cases cited by the Bank Defendants for the proposition that a debtor corporation can be a mere conduit because it did not have  authority to use them for any purpose other than transferring them to a third party as directed by the nondebtor.  (Ltd. Obj. at 7).  *Chase & Sanborn* is easily distinguished from the case at bar.

In *Chase & Sanborn*, the president of the debtor deposited money into one of the debtor's dormant bank accounts.  The funds were held in the accounts for just days before they were transferred to the president's secretary to pay a personal debt of the president.  813 F.2d at 1182. The Eleventh Circuit concluded that the debtor was merely used as a conduit on three grounds: first, there was no obligation of the debtor to repay the president; second, the money was not used by the debtor to purchase anything for the debtor or its business; and third, the money related to a personal debt of the president -- not a debt of the debtor.  In short, while the transfer

at issue in *Chase & Sanborn* was made through the Debtor, it related to a payment of a debt funded by a third party that had nothing to do with the debtor.[1]

The facts of the case at bar contrast sharply with the facts of *Chase & Sanborn*. In the Suffolk tender offer, Refco Capital made a secured loan to Suffolk, and Suffolk used the loan proceeds to purchase PlusFunds shares. Suffolk held the loan proceeds in its own account and proceeded to use the proceeds to purchase PlusFunds shares -- shares which Suffolk continues to own today. Unlike the situation in *Chase & Sanborn*, the transfer made by Suffolk was directly related to Suffolk's tender offer to purchase PlusFunds shares and did not pay any Refco Capital debt owed to the Bank Defendants or to any other entity.

The instant case is similar to a case cited by the Bank Defendants (Ltd. Obj. at 11 n.5) where the court found *Chase & Sanborn* inapplicable because the debtor (1) incurred liability to the lender on its balance sheet as a result of the transaction and (2) was the "intended, direct, and exclusive beneficiary of the consideration for the Payment." *See Kapila v. Espirito Santo Bank (In re Bankest Capital Corp.),* 374 B.R. 333, 343 (Bankr. S.D.Fla. 2007).

Here, Suffolk incurred liability to Refco Capital and was the exclusive recipient of the PlusFunds shares. Thus, as was the case in *In re Bankest Capital Corp.*, Suffolk was *not* a "mere conduit."

### The Special Master Appropriately Declined to Apply the Earmarking Doctrine

In the Limited Objection, the Bank Defendants argue once again that the earmarking doctrine, similar to the conduit defense to a preference, applies to the fraudulent transfers. (Ltd. Obj. at 11-13). On the contrary, the earmarking doctrine is wholly inapplicable to this case.

---

[1] Subsequent decisions have distinguished *Chase & Sanborn* on the precise ground that the case involved a transfer that was "tangential" to the debtor. *See, e.g., In re Gutpelet,* 137 F.3d 748 (3d Cir. 1998). Here the purpose of the loan from Refco Capital to Suffolk was for Suffolk to purchase the PlusFunds shares. Far from tangential, the transfer directly related to Suffolk's purchase of the PlusFunds shares.

Per the cases cited by the Bank Defendants, the "earmarking" doctrine provides that preferential payments made by a debtor are not avoidable when the payments simply replace an old creditor with a new one and do not decrease the value of the estate.[2] *See, e.g.*, *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 184 (2d Cir. 2007) (earmarking applies when debtor is simply "substituting a new creditor for an old creditor" and such substitution does "not diminish the debtor's estate"); *Glinka v. Bank of Vermont (In re Kelton Motors, Inc.)*, 97 F.3d 22, 25 (2d Cir. 1996) (earmarking applies where "the third party simply is substituted for the original creditor").[3]

The earmarking doctrine is based on the equitable principle that, because a debtor's estate is not affected by the transfer of debt from an old creditor to a new creditor (that is, the amount available for general creditors remains the same), such transfers should not give rise to an avoidance action in favor of the estate. *See In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 565 (8th Cir. 1988); *see also In re Flanagan*, 503 F.3d at 184-85 (earmarking requires that "the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.").[4]

Contrary to the cases where the earmarking doctrine has been applied, the case at bar does not involve a simple creditor swap. An antecedent debt of the debtor and diminution of the

---

[2]   One of the cases cited by the Bank Defendants does not even support the Bank Defendants' earmarking argument. In *Bankest Capital Corp.*, the court rejected an earmarking defense because the party asserting the earmarking defense had "failed to present or proffer any facts supporting the position that there was any express earmarking or restriction upon use of the funds." *Kapila v. Espirito Santo Bank (In re Bankest Capital Corp.),* 374 B.R. 333, 342 (Bankr. S.D. Fla. 2007) (rejecting earmarking exception and also holding that the debtor was not a "mere conduit").

[3]   The other earmarking cases cited by the Bank Defendants in the Limited Objection are to the same effect. *See Branch v. Hill, Holliday, Connors, Cosmopoulos, Inc. Adver. (In re Bank of New England Corp.),* 165 B.R. 972, 978 (Bankr. D. Mass. 1994) (earmarking applied where there was a "straight pass-through of the funds" from a new creditor to "to a narrow defined group of creditors").

[4]   Earmarking is a narrow doctrine, and even small distinctions lead courts to conclude that earmarking does not apply. *In re Bohlen Enterprises*, 859 F.2d at 565 (finding earmarking inapplicable when the debtor used the funds to pay the earmarked lender, the old creditor, for a different debt than intended by the new creditor); *In re Flanagan*, 503 F.3d at 185-86 (earmarking does not apply when the debtor replaces an "unsecured obligation with a secured obligation").

estate are two requirements for earmarking.  *In re Flanagan,* 503 F.3d at 184-85.  Neither element exists here.  Suffolk did not have pre-existing debt to the Bank Defendants -- or to other PlusFunds shareholders -- that was substituted for debt to Refco Capital.  Moreover, in sharp contrast to an earmarking case, the transfers to the Bank Defendants that the Suffolk Trustee seeks to avoid deeply affected Suffolk's estate.  Far from having no value, the transfers made to the Bank Defendants greatly diminished the value of the Suffolk estate because the PlusFunds shares received in exchange were virtually worthless.  The insufficient value of the PlusFunds shares precluded Suffolk from repaying its debt to Refco Capital.  This is not a situation where Suffolk was unaffected by the transfer.  On the contrary, as alleged in the Amended Complaint, the transfers rendered Suffolk insolvent.

## CONCLUSION

For the foregoing reasons, the Special Master correctly found that Suffolk was not a mere conduit and correctly declined to apply the earmarking doctrine.  Further, for the reasons stated herein and in the Suffolk Trustee's objection to the Special Master's Report and Recommendation on the Bank Defendant' Motion to Dismiss the Amended Complaint, the Suffolk Trustee respectfully requests that this Court reject the Special Master's Report and Recommendation and deny the Bank Defendants' motion to dismiss the Amended Complaint.

Dated: New York, New York
       September 17, 2010

CIARDI, CIARDI & ASTIN


By:   /s/ Rick A. Steinberg
       Rick A. Steinberg (RS-7396)
       100 Church Street, 8th Floor
       New York, NY 10007
       Telephone: (646) 485-0605
       Facsimile: (646) 688-4385

       *-and-*

CIARDI CIARDI & ASTIN
       Albert A. Ciardi III
       Carl E. Singley
       2005 Market Street, Suite 1930
       Philadelphia, PA 19103
       Telephone:  (215) 557-3550
       Facsimile:  (215) 557-3551

       *Counsel for George L. Miller, Chapter 7*
       *Trustee of Suffolk, LLC*